Filed 9/16/20  In re M.C. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re M.C., a Person Coming Under the Juvenile Court Law. | B303482 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>LOUIE C.,<br><br>        Defendant and Appellant. | (Los Angeles County Super. Ct. No. 18CCJP00576A) |

APPEAL from orders of the Superior Court of Los Angeles County, Sabina A. Helton, Judge.  Conditionally affirmed and remanded.

John L. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kristine P. Miles, Assistant County Counsel, Peter Ferrera, Principal Deputy County Counsel for Plaintiff and Respondent.

---

Louie C. (father) challenges the juvenile court's order placing M.C. (minor) in a legal guardianship under Welfare and Institutions Code section 366.26.[1]  Father contends there was insufficient evidence to support the juvenile court's determination that the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) did not apply.  Respondent Los Angeles County Department of Children and Family Services (Department) contends father has not shown prejudicial error, and alternatively requests that any remand be limited.  We conditionally affirm and remand the case for the limited purpose of compliance with ICWA.

## FACTUAL AND PROCEDURAL BACKGROUND

Because the sole issue raised in father's appeal is ICWA compliance, we focus primarily on the facts and procedural background relevant to that issue.  Minor was detained in January 2018, based on a history of domestic violence between A.B. (mother) and father, and substance

[1] All statutory references are to the Welfare and Institutions Code, unless stated otherwise.

2

abuse.  At the detention hearing, mother signed and filed a *Parental Notification of Indian Status* (ICWA-020) form, claiming possible Cherokee Indian ancestry through her grandfather, Ernest B.  During the hearing, mother explained that her possible Cherokee ancestry was on her paternal grandfather's side of the family.  After the court gave a brief explanation of ICWA, it asked mother to identify anyone the Department could speak with who might have information about mother's claim of Indian ancestry.  Mother identified her paternal grandfather, confirming that he was still alive.  The court directed mother to provide her paternal grandfather's phone number to the social worker, and ordered the Department to investigate.  Minor's counsel asked the court to consider maternal aunt as a relative placement.

The Department's February 2018 jurisdiction and disposition report notes mother's claim of Cherokee ancestry and that mother stated that she would provide the social worker with information.  The Department stated it would "continue to assess for ICWA eligibility and send out notices as required."  On the question of relative placement, the Department had been in contact with both maternal aunt Alisha B. and F.P., who identified herself as mother's first cousin.

According to a September 2018 last minute information report, mother was unable to provide a name or date of birth for her paternal grandfather, and claimed he had recently passed away.  The Department reported it would "continue

3

to collaborate with mother in an effort to appropriately address ICWA." Mother also asked the Department to consider placing minor with her brother, A.B, or a maternal aunt, N.B., who lives in New Orleans. On September 25, 2018, after father filed a motion under Code of Civil Procedure section 170.6 and the case was transferred, the newly-assigned judge noted that mother "at one point indicated that her recently deceased grandfather was Cherokee Indian, and it was not followed up on in the other court." The court then ordered notices for the Cherokee Nation and the Bureau of Indian Affairs.

In a November 2018 last minute information report, the Department reported that mother claimed possible Cherokee ancestry, but she was unable to provide a name or date of birth for the relative that might have Indian history. Nevertheless, the Department reported it "sent notice to the following tribes/agencies in an effort to assess for ICWA:" the Cherokee Nation, the United Keetoowah Band of Cherokee Indians, the Eastern Band of Cherokee Indians, the Bureau of Indian Affairs ("BIA"), and the Secretary of the Interior. The Department attached return receipts and the one response denying minor was ICWA eligible, but it did not attach a copy of the ICWA-030 notice.

The Department's January 7, 2019 last minute information report included the same information and attachments. At the January 7, 2019 disposition hearing, father filed a *Parental Notification of Indian Status* (ICWA-020) denying any Indian ancestry. After minor's counsel

4

noted that mother had claimed Indian ancestry, the court confirmed that enough time had lapsed since the Department mailed the ICWA notices, and determined that there was no reason to know that minor was an Indian child and ICWA did not apply to the case. The court's written minute order instructed the parents "to keep the Department, their Attorney and the Court aware of any new information relating to possible ICWA status." During the hearing, minor's counsel sought an order to prevent the Department from removing minor from maternal cousin's home, absent exigent circumstances, stating, "He has been there for quite some time and I believe that placement is the most appropriate for him now." The Department objected, noting there had been some family conflict and mother had expressed some concerns to the social worker. After noting that the Department could respond to any concerns, it ordered that minor not be removed "absent an emergency or prior court order."

On May 10, 2019, minor was placed in the home of maternal aunt Alisha B. The Department's section 366.26 report recommended that minor's permanent plan should be a legal guardianship with maternal aunt Alisha B., as she wanted to be appointed legal guardian, but was not ready to pursue adoption. On December 20, 2019, after the court found that minor was living with a relative who was not willing to adopt, but was willing to provide a stable and permanent environment through legal guardianship, it

appointed Alisha B. as minor's legal guardian and terminated jurisdiction.  Father filed a notice of appeal.

## DISCUSSION

Father contends there was insufficient evidence to support the court's finding that ICWA was inapplicable, and so the December 2019 order placing minor in a legal guardianship should be reversed.  The Department argues that mother's statements were inadequate to require either notice or further inquiry into her claims of Indian ancestry.  The Department also argues that any error was harmless, and to the extent we find prejudicial error, our remand should be limited, solely directing the juvenile court to order the Department to conduct additional inquiry into mother's claim of Indian heritage and report the results to the court for such additional findings and orders required under ICWA.  In his reply brief, father urges us to find prejudicial error and reject the Department's argument that a limited remand is warranted.

*Overview of governing law*

"Congress enacted ICWA in 1978 in response to 'rising concern in the mid-1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes

6

through adoption or foster care placement, usually in non-Indian homes.' [Citation.]" (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7–8 (*Isaiah W.*).) "In California, . . . persistent noncompliance with ICWA led the Legislature in 2006 to 'incorporate[] ICWA's requirements into California statutory law.' [Citations.]" (*In re Abbigail A.* (2016) 1 Cal.5th 83, 91; see also *In re Breanna S.* (2017) 8 Cal.App.5th 636, 650 (*Breanna S.*) [California law "incorporates and enhances ICWA's requirements"].) Both ICWA and California law define an "Indian child" as a child who is either a member of an Indian tribe or is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe. (25 U.S.C. § 1903(4); § 224.1, subds. (a) & (b); see also *In re Elizabeth M.* (2018) 19 Cal.App.5th 768, 783 (*Elizabeth M.*).)

Noncompliance with ICWA inquiry or notice requirements may be raised by either parent on appeal from an order terminating parental rights, even if the parent did not appeal an earlier order finding the ICWA inapplicable, and even if the appealed order did not contain an express ICWA finding. (*Isaiah W.*, *supra*, 1 Cal.5th at pp. 9–15 [continuing duty under ICWA]; *In re A.M.* (2020) 47 Cal.App.5th 303, 314, fn. 4 [absence of express finding does not diminish requirement of a current ICWA finding]; *In re A.W.* (2019) 38 Cal.App.5th 655, 665 [a non-Indian parent has standing to raise an ICWA violation on appeal].)

Because father is appealing from the court's December 2019 order, and the juvenile court has a continuing duty to

determine whether ICWA applies, we apply the federal and state statutes in effect on the date of the hearing. (§§ 224.2, 224.3 [Stats. 2018, ch. 833, §§ 4–7]; *In re A.M.*, *supra*, 47 Cal.App.5th at p. 315.)

We review the trial court's ICWA findings for substantial evidence. (*In re Hunter W.* (2011) 200 Cal.App.4th 1454, 1467.) We must uphold the court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we resolve all conflicts in favor of affirmance. (*In re Alexzander C.* (2017) 18 Cal.App.5th 438, 446.)

*Duty of inquiry*

The court and the Department have an affirmative and continuing duty under ICWA and related California law to inquire whether a child who is the subject of a dependency proceeding is or may be an Indian child. (*Isaiah W.*, *supra*, 1 Cal.5th at pp. 7–8.) The scope of the duty of inquiry is defined in regulations promulgated under ICWA (see 25 C.F.R. § 23.107 *et seq.* (2018)) and sections 224.2 and 224.3. As discussed in two recent cases, California law imposes a duty of initial inquiry in every case, and a duty of further inquiry when there is reason to believe a minor may be an Indian child under ICWA. (*In re Austin J.* (2020) 47 Cal.App.5th 870, 883 (*Austin J.*); *In re D.S.* (2020) 46 Cal.App.5th 1041, 1048–1049.)

The Department's initial duty of inquiry at the beginning of a child welfare proceeding includes "asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child." (§ 224.2, subd. (b).) The court must inquire at each party's first appearance, whether any participant in the proceeding "knows or has reason to know that the child is an Indian child." (§ 224.2, subd. (c).) Part of the initial inquiry also includes requiring each party to complete California Judicial Council form ICWA-020, Parental Notification of Indian Status. (Former Cal. Rules of Court, rule 5.481(a)(2).)

When there is reason to believe that an Indian child is involved in a proceeding, further inquiry is required. (*Austin J., supra,* 47 Cal.App.5th at p. 883; *In re D.S., supra,* 46 Cal.App.5th at pp. 1048–1049.) As relevant here, further inquiry includes interviewing parents and extended family members to obtain information such as the names of the child's "biological parents, grandparents, and great-grandparents . . . as well as their current and former addresses, birth dates, places of birth and death, tribal enrollment information of other direct lineal ancestors of the child, and any other identifying information, if known." (§ 224.2, subd. (e)(1); 224.3, subd. (a)(5)(C).) The agency engaging in further inquiry is also required to contact the BIA, the State Department of Social Services and any tribes the child may be affiliated with, and anyone else that might

have information regarding the child's membership or eligibility in a tribe. (§ 224.2, subd. (e)(2) & (e)(3).) Before the January 1, 2019 amendments to the Welfare and Institutions Code took effect, the Department was still under a duty of further inquiry, described as follows: "If the court or social worker 'knows or has reason to know' the child is or may be an Indian child, the social worker 'is required to make further inquiry regarding the possible Indian status of the child, and to do so as soon as practicable, by interviewing the parents, Indian custodian, and extended family members' and 'any other person that reasonably can be expected to have information regarding the child's membership status or eligibility' in order to 'gather the information required.' . . . [Citations.]" (*In re N.G.* (2018) 27 Cal.App.5th 474, 481.)

### *Duty to notify Indian tribes*

If the court "knows or has reason to know that an Indian child is involved" in a dependency proceeding, the Department must notify the Indian child's tribe of the pending proceedings and of their right of intervention. (25 U.S.C. § 1912(a); 25 C.F.R. § 23.111(a)–(c) (2018); see also § 224.3, subd. (a).) Statutory amendments that took effect in 2019 conformed California law to the federal regulations that define "reason to know" as existing when one of six criteria are met. (§ 224.2, subd. (d); *In re A.M.*, *supra*, 47 Cal.App.5th at pp. 315–316.) Under the criterion most

10

relevant here, a court has "reason to know" the child is an Indian child if "[a]ny participant in the proceeding, officer of the court involved in the proceeding, Indian Tribe, Indian organization, or agency informs the court that it has discovered information indicating that the child is an Indian child." (25 C.F.R. § 23.107(c)(2) (2018); § 224.2, subd. (d)(1); *In re A.M.*, at p. 315.) A mere claim of tribal ancestry, without more, does not give rise to a "reason to know" that would trigger the duty to provide notice. (See, e.g., *In re A.M.*, at p. 315 [reason to know is a limited definition, and the duty to provide notice is narrower than the duty of inquiry].)

When ICWA notice is required, it must be sent by registered or certified mail with return receipt requested. (25 C.F.R. § 23.111(c) (2018); § 224.3, subd. (a)(1).) Copies of the notice and any return receipts or other proof of service must be filed with the court. (25 C.F.R. § 23.111(a)(2) (2018); § 224.3, subd. (c); Cal. Rules of Court, rule 5.482(b).)

*Analysis of father's arguments*

Father contends the Department fell short on its inquiry and notice obligations under ICWA. The Department does not dispute that its ICWA notices were never filed with, or reviewed by, the juvenile court. Rather, the Department argues that father cannot show prejudicial error because the information mother provided was

11

insufficient to require either further inquiry or notice under ICWA.

We first conclude that the juvenile court erred when it found ICWA inapplicable without first reviewing copies of the ICWA notices.  (*In re Louis S.* (2004) 117 Cal.App.4th 622, 629 (*Louis S.*) [when an agency sends ICWA notices to one or more tribes but fails to file copies of the notices or the return receipts, the juvenile court lacks sufficient information to determine whether there was compliance with ICWA's notice requirements]; see also *In re Karla C.* (2003) 113 Cal.App.4th 166, 175–179; 25 C.F.R. § 23.111(a)(2) (2018); § 224.3, subd. (c) [requiring notice to be filed].)  In *Louis S.*, the agency sent ICWA notices to one tribe and the BIA.  (*Louis S.*, *supra*, at p. 627.)  The agency filed the negative response received from the tribe, but did not include copies of the notices or any return receipts.  (*Id.* at p. 629.)  The appellate court found error, reasoning that responses filed without copies of the notices sent "are insufficient because it is impossible to determine from the responses alone whether the notices provided the tribe with relevant information and therefore with a meaningful opportunity to evaluate whether the dependent minor is an Indian child within the meaning of the ICWA."  (*Ibid.*)  Here too, the juvenile court had no way to know what information the Department included in the notice, because no copy had been filed.  The court therefore lacked adequate information to make a determination that minor was not an Indian child under ICWA.

The Department argues that any error was harmless because the information mother provided was inadequate to create a duty of further inquiry under section 224.2, subdivision (e)(1) or a duty to give notice under section 224.3, subdivision (a). We reject the Department's argument. While it is true that errors in ICWA notices may be found harmless in certain situations, here, the Department cannot rely on its own failures to argue that father has not demonstrated prejudicial error. (*In re K.R.* (2018) 20 Cal.App.5th 701, 708–710 [agency cannot rely on absence of documentation to argue that appellant's claim of ICWA error must fail on appeal]; *In re N.G.*, *supra*, 27 Cal.App.5th at p. 483 [deficiencies in ICWA notices may be harmless in some circumstances]; *In re Andrew S.* (2016) 2 Cal.App.5th 536, 548 [Department had duty to conduct further inquiry on remand, where it was aware that father had siblings].)

The record lacks evidence that the Department even met the initial duty of inquiry under section 224.2, subdivision (b), and later reports demonstrate that the Department either ignored or lost track of the relevant information it already possessed. California law tasks the agency conducting initial inquiry to obtain information not only from parents, but also the minor, extended family members, and the party reporting child abuse or neglect. (§ 224.2, subd. (b).) At the beginning of the case in January 2018, mother informed the court that she believed she had possible Cherokee ancestry through her paternal

grandfather, identifying him by name, Ernest B. She confirmed he was still alive and agreed to provide his contact information to the social worker. In February 2018, the Department was in contact not only with mother, but also with two of mother's relatives, including the maternal aunt who later became minor's legal guardian. But there is no evidence in the record that the Department asked any of mother's relatives about mother's claim of Cherokee ancestry, even though the Department remained in contact with the relatives and with mother throughout the course of the proceeding. The record shows that the Department was also aware that mother had additional relatives, including a brother and a maternal aunt, both of whom mother had identified as additional placement options, but there is no evidence that those relatives were ever contacted.

Making matters worse, on two separate occasions, the Department gave reports that contradicted the information mother had already provided. Even though mother had already provided her grandfather's name at the hearing in January 2018, the Department reported in September 2018 that mother was unable to provide her grandfather's name and that she claimed he had recently passed away. In November 2018, in the same report that provided the court with copies of return receipts and a response to the ICWA notice, it reported mother "has been unable to provide a name or date of birth for the relative(s) that might have Indian history." These later reports inexplicably ignore the information mother had already provided.

14

Based on the absence of any evidence that the Department made efforts to satisfy even its initial inquiry duties under ICWA and related state law, we are unable to determine whether further inquiry or notice would have been required in this case. The Department's failure to file the ICWA notices it did send also made it impossible for juvenile court or this court to determine whether any relevant info, even mother's grandfather's name, was included in the notices. On the record before us, we conclude the juvenile court lacked sufficient evidence to make any determination about whether ICWA applied, and we cannot find the error to be harmless. We remand the matter for the limited purpose of having the juvenile court order the Department to provide a more complete report of its inquiry and notice efforts. Based on the information provided, the juvenile court must then determine whether further actions are necessary to satisfy the duties under ICWA and related California law. (*In re K.R.*, *supra*, 20 Cal.App.5th at p. 709 [limited remand]; E*lizabeth M.*, *supra*, 19 Cal.App.5th at p. 788 [same].)

## DISPOSITION

The December 2019 order of legal guardianship under section 366.26 is conditionally affirmed. The matter is remanded to the juvenile court, with directions that the juvenile court order the Department to file copies of the ICWA notices previously sent, as well as a report detailing its inquiry efforts. The juvenile court may then decide whether additional inquiry or notice is required under ICWA and related California law. If nothing further is required, the court shall reinstate the guardianship order. If notice is required and a tribe responds that M.C. is an Indian child, then further proceedings shall be conducted under ICWA.


MOOR, J.

We concur:



BAKER, Acting P. J.



KIM, J.